**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**TRISTA JONES**                                                                                                    **PLAINTIFF**

**VS.**                                             **3:13-CV-00252-BRW**

**RK ENTERPRISES OF
BLYTHEVILLE, INC.,** *et al.*                                                                          **DEFENDANTS**

<u>**ORDER**</u>

Pending are Plaintiff's Motion for Attorneys' Fees (Doc. No. 49) and Supplemental Motion for Attorneys' Fees (Doc. No. 68). Defendants responded to both motions[1] and Plaintiff replied.[2] For the reasons set out below, the motions are GRANTED IN PART and DENIED IN PART.

**I.      BACKGROUND**

Plaintiff worked as the manager for Defendants' hotel from January until December 2013. Despite Plaintiff's title as "manager," she is not an exempt employee under the Fair Labor Standards Act ("FLSA"). During 2013, Plaintiff's compensation package included a salary of $1,500 a month and free on-site housing.[3]

Plaintiff contacted her lawyers regarding potential FLSA issues in mid-November, and she filed a complaint on November 26, 2013. Plaintiff either quit or was fired on December 13, 2013, but returned to work on December 17, 2013. That same day, she signed an agreement with Defendants indicating that she "agree[d] to settle any back wages . . . for the sum of $6,000."[4]

---

[1]Doc. Nos. 51, 70.

[2]Doc. Nos. 52, 72.

[3]Plaintiff's Trial Exhibit 3.

[4]Doc. No. 7-1.

1

(Plaintiff received another $1,000 from Defendant, at a later date, for a total of $7,000). The document included other terms of employment as well. Plaintiff quit working for Defendant in January 2014, and worked at a different hotel from January to September 2014. However, she was rehired by Defendant in January 2015.

After a one-day bench trial, I granted judgment for Plaintiff on her FLSA claims against Defendants, and found in favor of Defendant regarding the retaliation claim and punitive damages request. Since Defendant had already paid Plaintiff $7,000 in previously unpaid overtime compensation, the parties agreed her damages would be reduced by $7,000. Plaintiff was awarded $7,438.03 for unpaid overtime wages and $7,438.03 for liquidated damages, for a total of $14,876.06. However, Defendant had to pay Plaintiff only $7,876.06 after the reduction.

Plaintiff filed a motion requesting $43,355.00 in attorneys' fees and $1,581.92 in costs. I granted Plaintiff's motion in part and held that "[t]aking all the factors into consideration, I believe $4,500 is a reasonable lawyers' fee and $1,581.92 reasonable costs in this case."[5] Plaintiff appealed, and the Court of Appeals for the Eighth Circuit vacated the attorneys' fees order and remanded the case "with directions to determine an attorney's fee award in accordance with the lodestar approach" and *Hensley v. Eckerhart*.[6]

On February 25, 2016, Plaintiff filed a supplemental motion for attorneys' fee requesting an additional "$16,603.68 for the successful prosecution of her appeal . . . for a total of $61,540.60."[7]

---

[5]Doc. No. 53.

[6]Doc. No. 63.

[7]Doc. No. 69.

## II.     DISCUSSION

The lodestar method is the "most useful starting point for determining the amount of a reasonable fee."  It requires the court to consider "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[8]  Then the court should "adjust the fee upward or downward on the basis of the results obtained."[9]  "[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case."[10] "A reasonable fee is one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys."[11]

"An attorney fees award under a fee-shifting statute should be comparable to what is traditionally paid to attorneys who are compensated by a fee-paying client."[12]  Hours that were not "reasonably expended" must be excluded.[13]  "Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise

---

[8]*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

[9]*Wheeler v. Missouri Highway & Transp. Comm'n*, 348 F.3d 744, 754 (8th Cir. 2003).

[10]*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551(2010) (emphasis in orginal).

[11]*Hendrickson v. Branstad*, 934 F.2d 158, 162 (8th Cir. 1991) (internal quotations omitted).

[12]*Morales v. Farmland Foods, Inc.*, No. 8:08CV504, 2013 WL 1704722, at *7 (D. Neb. Apr. 18, 2013) (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 287 (1989)).

[13]*Hensley*, 461 U.S. at 434.

unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."[14]

### A. Hourly Rates

Plaintiff requests the following hourly rates for the lawyers who worked on this case:

| | |
|---|---|
| Stacy Coonce | $125.00 |
| Joshua West | $190.00 |
| Christopher Burks | $190.00 |
| Steve Rauls | $200.00 |
| Amber Schubert | $225.00 |
| Josh Sanford | $290.00 |

According to an affidavit submitted by Mr. Sanford, the rates are consistent with lawyers in the area who work on similar cases. However, in another case in the Eastern District of Arkansas being litigated during this same time-period, some of these same lawyers billed at a lower rates.[15] While I realize that at some point the rates may have gone up, nothing in the submitted documentation indicates when the rate-hike happened. Had Plaintiff's lawyers not been retained on a contingency basis, they would have been required to notify their client of the rate increase and included the new rate in the billing. Notably, the invoices indicate that Mr. Sanford's rate is $290 an hour, but the fee petition says it's $275 an hour.[16] Based on this inconsistency and the fact that other clients were charged lower rates during the same time period., the lower rates are appropriate. Accordingly, I find the following are reasonable hourly rates in this case:

| | |
|---|---|
| Stacy Coonce | $125.00 |
| Joshua West | $175.00 |
| Christopher Burks | $190.00 |
| Steve Rauls | $200.00 |

---

[14]*Id.*

[15]See *Collins, et al. v. Barney's Barn Inc., et al.*, No. 4:12-CV-00685-SWW (E.D. Ark.), Doc. No. 81-1.

[16]Doc. No. 50.

      Amber Schubert    $225.00  
      Josh Sanford      $275.00

At these lower rates, the total fees claimed by the lawyers are the district court level are $40,402.25.

| Attorney | Hourly Rate | Hours Billed | Fees Charge |
|---|---|---|---|
| Stacy Coonce | $125.00 | 1.40 | $175.00 |
| Joshua West | $175.00 | 147.55 | $25,821.25 |
| Christopher Burks | $190.00 | .30 | $57.00 |
| Steve Rauls | $200.00 | 1.70 | $340.00 |
| Amber Schubert | $225.00 | 1.50 | $337.50 |
| Josh Sanford | $275.00 | 49.30 | $13,557.50 |
| Staff | $60.00 | 1.90 | $114.00 |
| **TOTAL** | | **203.65** | **$40,402.25** |

Plaintiff's lawyers also contend that they spend about 83.7 hours on the appeal. At the originally requested rate this would be around $17,083.[17] However, the total under the new rates would be $15,827.50. Factoring in Plaintiff's 10% reduction, the total would be $14,244.75.[18]

| Attorney | Hourly Rate | Hours Billed | Fees Charge |
|---|---|---|---|
| Joshua West | $175.00 | 71.90 | $12,582.50 |
| Josh Sanford | $275.00 | 11.80 | $3,245.00 |
| | | 83.70 | $15,827.50 |
| | | | -10% |
| **TOTAL** | | | **$14,244.75** |

---

[17]Plaintiff's estimate was $17,273.00, but my estimate was $17,083.00.

[18]Plaintiff included a 10% overall reduction on the invoice to account for "any other proper deductions" that may have been overlooked.

Plaintiff's lawyers billed a total of 287.35 hours, which results in a fee request of $54,647.00 under the reduced rate.

**B.     Hours Expended[19]**

Now I must consider the reasonableness of the hours expended in the case. Plaintiff's lawyers assert that they spend over 287 hours on this case. As set out below, this is not a reasonable request for this case.

I will first point out a case that Plaintiff's lawyers had before Judge Price Marshall.[20] Though Judge Marshall's case is unrelated to this one, he addressed several issues in the fee petition that also appear in this case – which means Plaintiff's lawyers should have been aware that some of their billing habits were unacceptable. For example, the complaint, basically, is a form complaint, but the lawyers contend that they spent over 3 hours drafting it. As Judge Marshall noted, although the form complaint is "the product of counsel's expertise and experience, [t]he time billed for tailoring this form is too much."[21] The same is true here.

Judge Marshall also noted that it was not acceptable for lawyers to do their own filing and then charge a lawyer's rate. He held that "while counsel may prefer to do his own electronic filing, it is not right to charge the other side a rate of $275.00 an hour for twelve minutes' work for that task."[22] Again, the same thing repeatedly happened here. For example, the invoice indicates that Plaintiff's lawyer billed 12 minutes for filing a motion and charged his $190-an-

---

[19]Zoll v. E. Allamakee Cmty. Sch. Dist., 588 F.2d 246 n.11 (8th Cir. 1978) (setting out twelve factors that should considered when assessing attorneys' fees).

[20]*Davis v. LKQ Auto Parts of Memphis, Inc., et al.*, No. 3:12-CV-00115-DPM (E.D. Ark.), Doc. No. 17.

[21]*Id.*

[22]*Id.*

hour rate – that's $38.  He also charged 12 minutes for filing the amended complaint.  In fact, there are numerous entries in the invoice where's the lawyers were filing the documents and charging their normal rate – but this type of work is typically done by a secretary or paralegal.

Numerous other entries (and hours) involve work that could have been done by a paralegal or a secretary, rather than the lawyers.  For example, composing and preparing representation agreement, composing email to client regarding contract, working on a client's file, opening firm file, traveling to Fed Ex., *etc*., are all needlessly billed at a lawyer's rate, when it is work that should be performed by a paralegal or secretary.  Another example: Plaintiff contends that "Chris Burks's and Stacy Coonce's hours are reasonable, given that they had to organize and create a new binder of Defendant's exhibits . . . ."  But these are lawyers, charging lawyers' rates, for secretarial work.  It is not reasonable "to award a full attorney rate for activities that should more effectively be performed by nonlawyers."[23]

Below are several more examples (though not exhaustive) which warrant a reduction of the "reasonable hours" spent on this case.

**Venue Issue**  – Billing 1.20 hours to determine appropriate venue within the district is excessive.  First, based on the lawyers' experience and the number of cases they have filed in this district, this should not have required much time.  Second, Plaintiff's complaint states that she and Defendants are all residents of Mississippi County.  The Court's website indicates that cases arising out of Mississippi County are in the Jonesboro Division.

**Work done by Secretary** – There are 17 entries, for a total of 2.6 hours, with the notation "S" – which appears to mean staff.  The notes say "Receipt of Electronic Court Filing

---

[23]*Chapman v. Astrue*, No. 2:08-CV-00040, 2009 WL 3764009, at *1 (W.D. Va. Nov. 9, 2009) (citing *Spell v. McDaniel*, 824 F.2d 1380, 1401–02 (4th Cir.1987)).

Notice. Save file-marked document in e-file," which would qualify as secretarial work.[24] "Secretaries' salaries come within a firm's overhead. Secretarial work on a case should not be billed to a client, nor to an opposing party in a fee-shifting case."[25]

**Affidavit for Attorneys' Fees** – Plaintiff's lawyers billed 1.50 hours for "preparation and drafting of declaration of Josh Sanford in support of fee petition."[26] However, the affidavit is nearly identical to the affidavits Plaintiff's lawyers use to support fee petitions in other cases.

**Process Server** – The lawyers seek 2.4 hours for hiring a process server. This is excessive.

**Clerk's Entry of Default** – The invoice includes 2.5 hours for dealing with getting a Clerk's entry of default. Again, based on the lawyers' experience, they should know how to do this. Additionally, the process is set out in the Federal Rules of Civil Procedure.

**Motion for Default Judgment** – Plaintiff's lawyers list several hours for issues relating to their motion for default judgement. This motion was unsuccessful.

**Reading an Order** – The lawyers request .25 hours for reading an October 28, 2014 order. The order was five sentences long. The request is unreasonable. Other similar requests appear in the invoice.

**Reading NEFs** – Plaintiff's lawyers billed .20 hours (at $290 an hour) to read the notice of electronic filing of a motion filed by his co-counsel. This too happened repeatedly. It does not take 12 minutes to read a "notice" that simply informs a lawyer that something was filed in

---

[24] Doc. Nos. 49-1, 68-1.

[25] *Fields, et al. v. R.L. Hurst, Inc., et al.*, No. 4:14-CV-00137-JLH, 2015 WL 6870065, at *2 (Nov. 6, 2015) (quoting *Gilster v. Primebank*, 884 F. Supp. 2d 811, 872 (N.D. Iowa 2012)); *Shrader v. OMC Aluminum Boat Group, Inc.*, 128 F.3d 1218, 1222 (8th Cir. 1997) (indicating that secretarial services are not part of attorney fee award).

[26] Doc. No. 49-1.

the case. Furthermore, billing to read a notice of a filing by co-counsel (that the invoice indicates the both lawyers worked on) is duplicative. This also appears to be an activity a secretary is capable of doing since, as set out above, there were 17 similar entries by "S."

**Original Fee Petition** – The lawyers request over 13 hours related to their original fee petition. Though the petition was long, most of it was recitations of law – which likely came from the firm's previous fee petitions.

**Invoices** – Plaintiff's lawyers billed over 3 hours on "edit[s] and revisions to invoices."

**Amended Complaint** – The 2.6 hours billed for researching, writing, and filing the amended complaint are unacceptable because the complaint was amended, primarily, to add a claim for retaliation. Plaintiff did not succeed on this claim at trial.

**Notices of Deficiency** – Plaintiff billed for time spent reviewing two notices of deficiency – that is, time counsel spent reviewing documents that notified him that he failed to include signatures on his filings.

**Double Billing** – On December 13, 2013 and April 25, 2014, two lawyers billed hours for a telephone conference they had with each other. Two lawyers also billed 4.30 hours and 1.00 hour for attending the September 4, 2014 hearing. The hearing did not require two lawyers. Two different lawyers billed .40 hours for reviewing Defendants' answer to the amended complaint. Two lawyers also billed for reviewing a Rule 26(f) report. On April 2, 2015, two lawyers again billed for participating in the same telephone conference. There are also several instances of two lawyers billing to review court orders or filings by opposing counsel.

**Notice of Appeal** – Plaintiff's Notice of a Appeal was one sentence in length. Yet, there are entries for editing, revising, preparing, drafting, examining, and filing the notice of appeal, that total .60 hours. And two lawyers were involved. This is excessive.

9

**Transcript** – In the hours related to the appeal, Plaintiff had several entries, totaling over an hour, related to obtaining a transcript. However, Plaintiff appealed only the attorneys' fee ruling, which did not require a transcript.

**Complexity of the Case** – This was a simple case that did not require two lawyers. In fact, during his opening statement, Mr. Sanford asserted that "we're essentially here for a damages hearing" because Defendant's answer conceded many of the legal issues.[27] Based on the information on Mr. West in the affidavit attached to the motion for fees, I believe he could have handled this case with little oversight from Mr. Sanford. Instead, there are numerous emails and telephone conferences between the two that unreasonably increased the hours spent on the case. Additionally, this case would not have required Plaintiff's lawyers to turn away other work in order to adequately prosecute the case. Again, this was a relatively straightforward case that fell directly within the lawyers' specialty.

**Settlement** – As I mentioned in an October 28, 2014 order, this is a case that would have been a good candidate for a settlement conference. It appears there were issues in getting this set up with Defendant's lawyer, but Plaintiff did not request my help. Still, it seemed that both sides were interested in settling since Defendant and Plaintiff (outside the presence of their lawyers) already attempted to resolve the dispute for $7,000. In fact, by March 2015, Plaintiff's lawyers became aware that Plaintiff was attempting to settle with Defendant on her own and might be interested in dismissing her case.[28] I realize Plaintiff's counsel raised valid legal issue regarding this arrangement, but that is not the point in mentioning it here. Clearly, both Plaintiff and

---

[27]Doc. No. 60.

[28]Doc. No. 51.

Defendants had an interest in resolving the case without going to trial.  I would also point out that, oddly, Plaintiff was subpoenaed to ensure that she would attend <u>her own trial</u>.[29]

**Limited Success** – Though Plaintiff was successful on her FLSA claim, the results obtained were a fraction of her demand.  Plaintiff argued that she was entitled to $88,338.64[30] but recovered only $7,876.06.[31]  This recovery is less than 10% of Plaintiff's demand.  Basically, by going to trial she obtained liquidated damages and amassed hours of attorneys' fees.

**C.    Summary**

As mentioned earlier, it appears this case could have settled early on, with minimal hours expended.  In fact, Plaintiff, without her lawyers' involvement, collected nearly half of the total judgment a few weeks after the case was filed.  Even assuming that there were issues in dealing with the other side, this case should have required no more than 50 hours ($8,750) from an associate and 20 hours ($5,500) from a partner, for a total of 70 hours and $14,250.  However, this figure must be reduced in light of Plaintiff's success.  Plaintiff was successful on liability and liquidated damages, but was unsuccessful on retaliation and punitive damages.  Furthermore, Plaintiff's recovery was less than 10% of what was demanded in her post-trial brief – a ruling that, notably, Plaintiff did not appeal.

Taking all the factors into consideration, I believe $6,500 is a reasonable lawyers' fee in this case.  The fact that a case involves fee shifting does not open the door to unwarranted billing that would otherwise never be incurred.  Additionally, a lawyer is still required to do a cost-

---

[29]*Id.*

[30]Doc. No. 39. $95,338.64 - $7,000 (amount already paid by Defendant) = $88,338.64.

[31]Doc. No. 47. $14,876.06 - $7,000 = $7,876.06.

11

benefit analysis when considering whether to proceed to trial or settle a case, just as lawyer in a non-fee-shifting case would.

**D.     Costs**

Plaintiff requests $2,639.90 in costs.  Defendants did not specifically object to the requested costs, and I find that they are reasonable.

**CONCLUSION**

Based on the findings of fact and conclusions of law above, Plaintiff's Motion for Attorneys' Fees (Doc. No. 49) and Supplemental Motion for Attorneys' Fees (Doc. No. 68) are GRANTED IN PART and DENIED IN PART.  Plaintiff is awarded $6,500 awarded attorneys' fees and $2,639.90 costs from Defendants, for a total of $9,139.90.

IT IS SO ORDERED this 21st day of March, 2016.

/s/ Billy Roy Wilson  
UNITED STATES DISTRICT JUDGE